IN THE MATTER OF THE TAX APPEAL OF
KAISER HAWAII-KAI DEVELOPMENT CO.

No. 4962.

APRIL 22, 1971.

RICHARDSON, C.J., MARUMOTO, ABE, LEVINSON,
AND KOBAYASHI, JJ.

OPINION OF THE COURT BY MARUMOTO, J.

The question in this case is whether Kaiser Hawaii-Kai Development Co. is liable for general excise tax under HRS c. 237 upon the payments made to it by the trustees of the Estate of Bernice P. Bishop, Deceased, pursuant to section F-8(c) of a land development agreement which it made with the latter on April 27, 1961.[1]

---

[1] In this opinion, Kaiser Hawaii-Kai Development Co. will be referred to as Hawaii Kai; and the trustees of the Estate of Bernice P. Bishop, Deceased, will be referred to collectively and in the singular as Bishop. HRS c. 237 imposes an excise tax on the privilege of doing business measured by the gross receipts derived from the business engaged in. The tax rate varies, depending on the business. Here, if Hawaii Kai is liable, the applicable rate is 4 percent. The text of section F-8(c) of the agreement is as follows:

"(c) The balance of all payments received by BISHOP for the leasing of the Lot or Lots in question shall for a total period of thirty (30) years of such payments be deemed to be collected for the account and benefit, and as the exclusive property of, HAWAII KAI, and after deducting therefrom any general excise tax required

The payments involved here were made in 1966, 1967, and 1968, and amounted to $870,890.19. Hawaii Kai did not report them in its general excise tax returns on the ground that they constituted only an accounting of its share of ground rentals jointly earned with Bishop on which Bishop paid the requisite tax.

It is the position of the State director of taxation that Hawaii Kai is liable inasmuch as the payments under section F-8(c) are gross receipts derived by it from its contracting business and not from engaging in any leasing activity jointly with Bishop. Accordingly, the director levied an additional assessment against Hawaii Kai in the sum of $35,329.43, of which $34,835.61 was tax and $493.82 was interest.

Hawaii Kai paid the amount so assessed under protest, and appealed to the tax appeal court. The tax appeal court sustained the appeal, and entered a judgment ordering the director to refund to Hawaii Kai the amount of its payment, plus interest and costs. This case is here on the director's appeal from that judgment.

In our opinion, the director's position is well taken. Bishop and Hawaii Kai entered into the agreement for the following purposes: on the part of Bishop, it was to have Hawaii Kai develop and subdivide its lands at Maunalua, Oahu, into residential apartment, hotel, and commercial lots, suitable for leasing by it, without incurring any indebtedness other than the obligation to make the payments mentioned in section F-8(c); on the part of Hawaii Kai, it was to do the development and subdivision work called

---

to be paid thereon by BISHOP or any other tax imposed by law by reason of the receipt thereof by BISHOP, shall be accounted for by BISHOP and paid to HAWAII KAI within fifteen (15) days after the end of the month in which such payments are received by BISHOP. After HAWAII KAI shall have received such payments for a total period of thirty (30) years, HAWAII KAI shall have no further right to or interest in any amounts received by BISHOP with respect to the Lot or Lots in question. * * *"

for in the agreement and to use its best efforts to obtain lessees of the improved lots, all at its cost and expense, with the understanding that it would recover its expenditures, plus a profit for its effort and risk, solely out of "Lot Development Payments and rental proceeds."

Lot development payment is defined in the agreement as "the amount paid or payable by a lessee to HAWAII KAI for the development of a Lot, and for which amount BISHOP shall have no liability." Hawaii Kai has the exclusive right to determine the amount of the lot development payment for each lot and to receive and retain the same in toto.

The words "rental proceeds," as used in the phrase quoted above, obviously have the same meaning as "the balance of all payments" in section F-8(c).

In resolving the question at hand, it will be necessary to determine the nature of the balance of all payments mentioned in section F-8(c). To do that, the agreement must be considered as a whole. A consideration of the language of section F-8(c) alone and out of context will not suffice.

Under the agreement, Hawaii Kai is an independent contractor, not a partner or a joint venturer, and has no interest in the lands, except such as it may acquire as lessee of a particular lot or lots. Bishop remains the owner, and makes all leases in its name and for its account as lessor. There is no relationship of principal and agent between the parties.

There is in evidence in this case a form of lease for a residential lot. For the purpose of this case, it may be deemed typical, although leases of nonresidential lots are different in some respect.

Every residential lease is made for a term of 55 years. The annual rental payable during the first 25 years of the term is fixed jointly by Bishop and Hawaii Kai. The

rental is adjusted at the end of the 25th, 35th and 45th years of the term by agreement between Bishop and the lessee, or by arbitration upon their failure to agree, but the annual rental payable during the 26th through the 30th years of the term may not be adjusted to a figure below the annual rental payable during the first 25 years of the term. The lease requires the lessee to pay to Bishop the annual rental, plus the real property tax and improvement assessments on the leased lot.

The agreement requires the foregoing provisions to be incorporated in the lease, and Bishop is not free to deviate therefrom.

The annual rental payable during the first 30 years of the term is referred to in the agreement as "fixed annual rental." A portion of the fixed annual rental, ranging from 10 percent to 40 percent thereof, is designated as "basic rental." The percentage depends on the location of the lot and the lease period, that is, whether the period is the first 10 years, the second 10 years, or the third 10 years of the term.

With respect to each lease, other than any lease made to Hawaii Kai, the balance of all payments mentioned in section F-8(c) is the amount derived by deducting from the collections made by Bishop on account of fixed annual rental, real property taxes, and assessments, the amount it retains as basic rental, and the amounts paid by it for real property tax, assessments, and general excise tax. Bishop pays the general excise tax on the fixed annual rental collected by it and not merely on the basic rental it retains.

It is stated in section F-8(c) that the balance of all payments shall be "deemed to be collected for the account and benefit, and as the exclusive property of, HAWAII KAI." Hawaii Kai relies principally on that statement for its position, and the tax appeal court appears to have

given considerable weight to it in arriving at its decision.[2] The statement has no material bearing in resolving the question at hand.

Hawaii Kai's position is tenable if it in fact is engaged in the business of leasing jointly with Bishop and if the amount represented by the balance of all payments is in fact collected by Bishop as the exclusive property of Hawaii Kai. But the fact is that Hawaii Kai is not engaged in a joint leasing business with Bishop and the amount represented by the balance of all payments is not a part of any collection made by Bishop on behalf of Hawaii Kai. Hawaii Kai is not a co-lessor. Bishop is the exclusive lessor. The collection, of which the balance of all payments is a part, is made by Bishop on its own account and as rental to which it alone is entitled as the exclusive lessor. These facts are not changed by Bishop and Hawaii Kai agreeing to deem them to be otherwise.

Upon consideration of the agreement as a whole, we have no doubt that the payments under section F-8(c) are required to be made as consideration payable by Bishop to Hawaii Kai for the performance by the latter of its undertaking as an independent contractor to develop and subdivide the lands belonging to the former into leasable lots.

Insofar as the lots made available for leasing under the agreement are concerned, Hawaii Kai is engaged in the business of contracting. By engaging in that business, it derives gross receipts partly from lessees and partly from Bishop. The part it derives from lessees consists of lot

---

[2] The tax appeal court stated that "Bishop and Hawaii-Kai have a joint ownership interest in the lease rentals received by Bishop; that Bishop is merely acting as a collection agent for Hawaii-Kai in respect of that portion of the lease rentals to which Hawaii-Kai has a proprietary interest and which is paid over by Bishop to Hawaii-Kai; and that the general excise tax should be applied just once, with Bishop and Hawaii-Kai liable for the payment of such tax on its respective portion of the lease rentals, and no more."

development payments. Lot development payments are direct obligations of lessees to Hawaii Kai. The part derived from Bishop consists of the payments made under section F-8(c). These payments are Bishop's share of the quid pro quo for Hawaii Kai's contractual services. They are not obligations of lessees to Hawaii Kai. In case Bishop defaults, Hawaii Kai has no recourse to lessees for such payments.

Reversed.

*Johnson H. Wong,* Deputy Attorney General (*Bertram T. Kanbara,* Attorney General, with him on the brief), for appellant.

*Donald K. Iwai* (*Hong & Iwai* of counsel) for appellee.